**Rhonda K. WILKERSON, doing business as Forstar Trailers, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

No. 3:92 cv 78.

United States District Court,
E.D. Texas,
Paris Division.

Aug. 30, 1993.

William B. Hickman, R. Mark Karnes, Dallas, TX, for plaintiff, Rhonda K. Wilkerson.

Joseph A. Pitzinger, III, Dept. of Justice, Dallas, TX, Michael L. Paup, Acting Asst. Atty. Gen., Robert J. Wortham, U.S. Atty., for defendant, U.S.

## MEMORANDUM OPINION

JUSTICE, District Judge.

Plaintiff, Rhonda K. Wilkerson, brings this civil action against the United States under the Internal Revenue Code, the Administrative Procedures Act, the Federal Torts Claims Act, and the Fifth Amendment. The government has filed a motion to dismiss. For the reasons stated below, the government's motion to dismiss will be granted in part and denied in part, in an order entered concurrently herewith.

## I. *Background*

Wilkerson alleges that she owes no taxes and is the sole owner of Forstar Trailers. She further alleges that the Internal Revenue Service ("IRS") placed a levy on half of her income in order to collect taxes owed by Richard D. Forsyth. At the time, the IRS contended that Wilkerson's income was the community property of Wilkerson and Forsyth. Wilkerson, however, claims that no one other than she had any interest in or claim to the income levied upon. In addition, Wilkerson claims that the IRS sent notices of the levy to, or had other communications with, her bank, at least thirty-five of her customers, and others. She claims that the IRS obtained $2,469.39 directly as a result of these levies, and that the IRS's activities led to the closing of her business, valued at over $1,000,000.

## II. *Legal Standard for Motion to Dismiss*

 ·Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court· to dismiss a claim on the basis of dispositive law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In reviewing a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985). Rule 12(b)(6) does not countenance dismissals based on disbelief of a complaint's factual allegations. *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1832. However, "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true." *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d· 97, 100 (5th Cir.1974) (citing *Ward v. Hudnell,* 366 F.2d 247 (5th Cir.1966)).

Wilkerson's·first ·amended complaint contains the following claims: (1) wrongful levy, (2) unauthorized collection, (3) unauthorized disclosure, (4) violation of the Administrative Procedures Act ("APA"), (5) claims under the Federal Torts Claims Act ("FTCA"), and (6) violation of the Fifth Amendment. The government has filed a motion to dismiss all of these claims other than the wrongful levy claim.

## III. *Wrongful Levy under 26 U.S.C.. § 7426*

. The government does. not move to dismiss Wilkerson's claims based on 26 U.S.C. § 7426. However, the government does argue in its motion that the damages in Wilkerson's wrongful levy action must be limited to the value of property seized. The question of damages is not an appropriate subject for a motion to dismiss. The court will not address the issue of damages at this. time.

## IV. *Wrongful Collection under 26 U.S.C. § 7433*

 Wilkerson seeks damages under that part of the Taxpayers' Bill of Rights which provides for damages for wrongful collection:

If, in connection with any collection of Federal tax with respect to·a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for . damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a). The government claims that Wilkerson fails to state a cause of action with respect to § 7433, because she is not a "taxpayer" as that term is used in that section.

The United States Supreme Court has held that "limitations· and conditions upon which the Government consents to be sued must be strictly observed and· exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Reading § 7433(a) in this light, the section must apply only to actions by, the specific taxpayer against whom the IRS's collection efforts were directed. The section states that when the IRS engages.in wrongful collection activity "in connection with any collection of Federal tax with respect to a taxpayer ... *such* taxpayer," may sue, referring to the taxpayer against whom the collection efforts were directed. 26 ·U.S.C. § 7433(a) (emphasis added).

The definition of "taxpayer" urged by Wilkerson, "any person subject to any internal revenue tax," comes from another part of the Internal Revenue Code, 26 U.S.C. § 7701(a)(14). This definition makes less sense in the context of § 7433 for two reasons. First, it creates a very broad exception to the general rule of sovereign immunity, in violation of the principles enunciated in *Soriano,* 352 U.S. at 276, 77 S.Ct. at 273. Second, Congress, when it sought to create a cause of action for a broad category of plaintiffs, used far less ambiguous language to do so. For example, 26 U.S.C. § 7426 is entitled "Civil actions by persons other than taxpayers," and creates a cause of action in favor of "any person (other than the person against whom is assessed the tax out of which such levy arose)." This implies that

Congress intended to create a more restricted class of potential plaintiffs when it used the word "taxpayer" in § 7433.

Other courts which have considered this question have come to the same conclusion. In *Progressive Bank and Trust Co. v. Moore*, 91–1 USTC (CCH) ¶ 50,192, 1991 WL 55790 (E.D.La.1991), the court found that a woman whose property was seized in order to satisfy her husband's tax debts lacked standing to sue under § 7433, because she was not the taxpayer against whom the IRS was attempting to collect. *Matrix Development Corp. v. United States*, 815 F.Supp. 297 (E.D.Wis. 1993), followed *Progressive* and found that innocent third parties against whom the IRS issued levies in order to collect the taxes of another lacked standing to sue under § 7433. *Id.* at 300–02.[1]

Even when all allegations in Wilkerson's complaint are accepted as true and all reasonable inferences drawn from them, there is no indication that Wilkerson is a "taxpayer" to whom § 7433 provides a remedy. Wilkerson therefore fails to state a claim for which relief can be granted under § 7433, and her claim based on that section must be dismissed.

## V. *Unauthorized Disclosure under 26 U.S.C. § 7431*

### A. Applicable Law

■ The United States moves to dismiss Wilkerson's claims of unauthorized disclosure.

---

**1.** Plaintiff cites two Fifth Circuit cases, *Snodgrass v. United States*, 834 F.2d 537 (5th Cir.1987) and *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299 (5th Cir.1985), *cert. denied*, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986), for the general proposition that Congress has waived sovereign immunity in cases where the government forcibly extracts tax payments, as opposed to when such payments are voluntarily made. These cases must not be read so broadly, however. *Interfirst* simply noted that "In 26 U.S.C. § 7427 and 28 U.S.C. § 2680(c), Congress chose to distinguish between forcible and voluntary collection activities." *Interfirst*, 769 F.2d at 310. This statement should not be used to interpret § 7433, which had not been enacted at the time *Interfirst* was decided. Similarly, *Snodgrass* stands only for the narrow proposition that Congress chose by enacting § 7426 to protect only those third parties whose payment of taxes on behalf of others was involuntary. *Snodgrass*, 834 F.2d at 539. Thus neither of these two cases

If any officer or employee of the United States knowingly, or by reason of negligence, *discloses any return or return information* with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7431(a)(1) (emphasis added). Return information is defined as

"*a taxpayer's identity,* the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, *whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing,* or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) *of any person* under this title ..."

26 U.S.C. § 6103(b)(2)(A) (emphasis added). The government argues that Wilkerson has failed to state a cause of action under § 7431, in that (1) Wilkerson is not a "taxpayer" covered by the section and (2) the disclosures involved in this case were authorized.[2]

### B. Wilkerson's Standing under 26 U.S.C. § 7431

The parties agree that all of the government's efforts to collect taxes in this case

stands for a general rule that third parties always have a cause of action against the government for coerced collection of the taxes of another, nor can either case be used to interpret § 7433.

**2.** Because of the finding below that Wilkerson has not pleaded that any "return information" was disclosed, the issue of whether the disclosure, if any, was authorized need not be reached. However, the court nonetheless notes that the government's argument that the disclosures were authorized is not appropriate for resolution by a 12(b)(6) motion; the factors involved in the determination of whether a disclosure is authorized (*e.g.,* whether the disclosure was necessary to obtain information, whether that information was otherwise reasonably available, and whether the disclosure was made in connection with official collection activities) require the weighing of evidence.

were directed at collecting taxes owed by Robert D. Forsyth, not those of Wilkerson herself. The government claims that this fact forecloses suit by Wilkerson under § 7431 since it makes Forsyth, rather than Wilkerson, the "taxpayer" whom § 7431 protects. Section 6103(b)(2)(A) defines return information as information acquired from the return or income tax investigation "of *any person*" (emphasis added). The source of the return information therefore need not be the return or investigation of the specific taxpayer whose information is disclosed. *See Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir.1993) (holding that "[t]axpayer information obtained or prepared by the IRS ... is 'return information' regardless of the person with respect to whom it was obtained or prepared").

## C. Disclosure of "Return Information"

The relationship between the data disclosed and the source of that data goes not to standing, but to whether the information constitutes "return information" in the sense that it reveals a taxpayer's identity or whether the taxpayer's return was, is being, or will be examined. Accordingly, the government contends that Wilkerson has not stated a claim under § 7431, inasmuch as the information she claims was disclosed does not constitute "return information." Although ¶ 16 of Wilkerson's first amended complaint alleges that the government "disclosed return information or tax return information of Forstar and Plaintiff," such a conclusory allegation will not be admitted as true. *See Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974).

The complaint does specifically allege that the government's disclosures regarding Wilkerson consisted of the following phrase, repeated to several different recipients:

By virtue of taxes assessed against Robert D[.] Forsyth, SSN 466–04–2387, this levy covers and attaches to one-half of any funds due and owing to Rhonda McClain Wilkerson, dba Forstar Trailers, SSN 458–35–5712, EIN 75–2397927, such funds being the community property of Robert D. Forsyth and Rhonda McClain Wilkerson.

*See* Plaintiff's First Amended Complaint ¶¶ 10, 11, 13, 15. This sentence does not contain any "return information" as defined in 26 U.S.C. 6103(b)(2)(A). It neither states nor implies whether Wilkerson herself is a taxpayer, whether she was, is, or will be investigated for her taxes, or anything else about her finances or taxes. *See Mid–South Music Corp. v. United States*, 818 F.2d 536, 539 (6th Cir.1987) (disclosure that purported deductions in tax shelter sponsored by plaintiff were not allowable was not a disclosure of plaintiff's return information); *First Western Government Securities v. United States*, 796 F.2d 356, 359 (10th Cir.1986) (disclosure that the plaintiff had invoked the Fifth Amendment 135 times during a deposition taken as part of an investigation into the plaintiff's customers' tax returns did not reveal plaintiff's return information). All the disclosure in the case at bar actually states or implies about Wilkerson is that she is or was married to Forsyth and that half of her income can be reached by Forsyth's creditors, as it is community property.

Wilkerson also alleges several conversations between revenue officers and third parties regarding Wilkerson and Forstar and the collection of taxes. *See* Plaintiff's First Amended Complaint ¶¶ 12, 14. However, because the complaint alleges nothing about the content of these discussions, there is no basis on which to believe that any return information was disclosed during them. Because Wilkerson's complaint does not allege the disclosure of any "return information," she has failed to state a claim for which relief can be granted under 26 U.S.C. § 7431. Her claim under that section must therefore be dismissed without prejudice to her right to refile.

## VI. *Claims under the Administrative Procedure Act*

Wilkerson also seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, which waives sovereign immunity in cases of agency action where a nonmonetary remedy is sought. Notwithstanding, the APA is limited to situations in which no other statute exists, "that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

## A. Claim for Injunctive Relief

The government moves to dismiss Wilkerson's APA claims on the basis of the Anti–Injunction Act, 26 U.S.C. § 7421(a), which prohibits suits "for the purpose of restraining the assessment or collection of" any tax. The only recognized exception to this prohibition was articulated by the Supreme Court in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), which noted that a suit restraining assessment or collection of taxes could be maintained only if (1) plaintiff were *certain* of success on the merits and (2) the plaintiff could show irreparable injury. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974).

In the instant case, Wilkerson is not certain of success on the merits. The government's answer asserts that its levy against Wilkerson was justified on one of several alternative theories. Since "the Act prohibits suits for injunctions barring the collecting of federal taxes when the collecting officers have made the assessment and claim that it is valid," *Enochs*, 370 U.S. at 8, 82 S.Ct. at 1129, Wilkerson has no cause of action under the APA to restrain the collection of taxes.

Furthermore, Wilkerson claims that she may pursue her APA claim for injunctive relief under *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), which holds that the Anti–Injunction Act does not apply in situations where Congress has not provided an adequate, alternative remedy. *South Carolina*, however, involved a case in which the plaintiff had no other remedy whatsoever. In contrast, Wilkerson acknowledges that she has a remedy for wrongful levy under 26 U.S.C. § 7426, but challenges the adequacy of that remedy, in that the value of the levied property is small compared to her claimed loss of the value of her business.

■ An action for wrongful levy or wrongful collection comprises an alternative adequate to defeat an attempt to circumvent the Anti–Injunction Act, even when the claimed damages exceed the amount recoverable in either of those actions. *See Bob Jones*, 416 U.S. at 749, 94 S.Ct. at 2052 (not addressing irreparable injury that university might incur from removal of its tax exempt status, because absence of proof that the government could not win on the merits precluded injunction); *Enochs*, 370 U.S. at 2, 8, 82 S.Ct. at 1126, 1129 (plaintiff's allegation that the taxes would destroy his business insufficient to justify a request for injunctive relief). The Anti–Injunction Act thus prevents Wilkerson from obtaining the injunctive relief she seeks, and her claim for such injunctive relief must be dismissed.

## B. Claims for Equitable Non–Injunctive Relief

■ In addition to injunctive relief, Wilkerson seeks equitable relief of compensation under the APA. Such relief does not constitute "money damages," and so is allowed under the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 895, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988). The government argues that such claims are precluded by the wrongful levy provision, § 7426, which limits courts to granting relief according to its own terms. 26 U.S.C. § 7426(b). *See United Sand & Gravel Contractors, Inc. v. United States*, 624 F.2d 733 (5th Cir.1980). But Wilkerson alleges far more than mere wrongful levy. She also alleges additional damages caused by communications between IRS personnel and her customers, friends, and others. Because of these additional allegations, the remedy limitations of § 7426 do not apply, and a remedy may be available under the APA.

Accordingly, because Wilkerson seeks equitable compensation under the APA for actions other than wrongful levy, she states a claim for which relief may be granted, and such a claim will not be dismissed.

## VII. *Claims under the Fifth Amendment*

■ Wilkerson claims that the IRS's actions violated her Fifth Amendment rights, contained in both the Due Process and Takings Clauses. The government responds, once again, that it has not waived sovereign immunity because it has provided a remedy in the form of 26 U.S.C. § 7426. Because Wilkerson alleges more than simple wrongful levy, this argument must be rejected. *See*

*Rutherford v. United States,* 702 F.2d 580, 584 (5th Cir.1983) (remedies provided by § 7426 are inadequate, and an action under the Fifth Amendment is permissible, when plaintiffs claimed that an IRS agent had maliciously harassed them in connection with their taxes). Because Wilkerson's complaint, read in the light most favorable to her, can be read as alleging harassment by the IRS which lead to loss of her business, the government has not met its burden of proving that she has failed to state a claim for which relief can be granted under the Fifth Amendment. Wilkerson's Fifth Amendment claims will not be dismissed.

## VIII. *Claims under the Federal Torts Claims Act*

■ Wilkerson makes a claim under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1291, 1346, 2671–2680, which waives the government's sovereign immunity for torts committed by government agents. However, there are numerous exceptions to this waiver, including § 2680(c), which negates the waiver for "any claim arising in respect of the assessment or collection of any tax...."

Section 2680(c) has been interpreted broadly to preclude a wide range of suits. *See Morris v. United States,* 521 F.2d 872, 874 (9th Cir.1975) (repeated harassing behavior and unlawful seizures and levies by IRS agents, even when such actions were beyond the normal scope of authority and amounted to tortious conduct, could not support a claim under the FTCA because they fall within the § 2680 exemption). Similarly, in *Capozzoli v. Tracey,* 663 F.2d 654 (5th Cir.1981), the Fifth Circuit held that an IRS agent's photographing of a parcel adjacent to the one he was supposed to be observing was covered by § 2680(c). However, the court also noted that:

> [I]t is conceivable that an IRS agent could engage in tortious conduct sufficiently removed from the agent's official duties of assessing or collecting taxes as to be beyond the cope of Section 2680(c), and at the same time sufficiently within the scope of his employment as to give rise to an action against the United States.

*Id.* at 658. Such a case arose in *Johnson v. Sawyer,* 980 F.2d 1490, 1503–04 (5th Cir. 1992), where the court concluded that IRS agents' actions in publishing information about plaintiff's conviction were not covered by § 2680(c) immunity by reason of the fact that they were directed at deterring future tax evasion by others. Such conduct is only tenuously related to tax assessment and collection.

In the instant case, Wilkerson alleges wrongful levy and other potentially tortious conduct relating to disclosures to third parties, including negligence and invasion of privacy. From the pleadings alone, it is impossible to determine the extent to which these activities were related to tax assessment and collection. Although the government contends that all disclosures were a legitimate part of the tax levy process, it is possible to infer, based on Wilkerson's first amended complaint, that the disclosures were made solely to harass her or ruin her business and with no intent to collect taxes or information to facilitate tax collection. For these reasons, the government has failed to show that Wilkerson does not state a claim for which relief can be granted under the FTCA; disposition upon motion for summary judgment is inappropriate.

## IX. *Conclusion*

Based on the foregoing, the United States' motion to dismiss will be granted in part and denied in part. An order incorporating these terms will issue concurrently with this memorandum.